**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 21, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Antonio Prophet,**
**Petitioner Below, Petitioner**

**vs)   No. 15-1092** (Berkeley County 15-C-66)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Antonio Prophet, pro se, appeals three orders of the Circuit Court of Berkeley County. In the first order, entered February 12, 2015, the circuit court (a) found that petitioner's pro se petition was "not sufficient" for a fair adjudication of his grounds for relief; (b) appointed habeas counsel to file an amended petition; and (c) preserved petitioner's objections to the rulings therein. In the second order, entered June 24, 2015, the circuit court summarily dismissed twenty-two of the grounds raised by petitioner in his habeas proceeding and directed respondent to file an answer to his remaining claims.[1] In the third order, entered October 28, 2015, the circuit court disposed of petitioner's ineffective assistance of counsel claims and denied his petition for a writ of habeas corpus. Respondent David Ballard, Warden, Mount Olive Correctional Complex, by counsel Cheryl K. Saville, filed a response, and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]The circuit court's February 12, 2015, and June 24, 2015, orders are under appeal because, when the last order disposing of the last of all claims is appealed, "[that] appeal brings with it all prior orders." *Riffe v. Armstrong*, 197 W.Va. 626, 637, 477 S.E.2d 535, 546 (1996), *modified on other grounds*, *Moats v. Preston Cnty. Comm'n*, 206 W.Va. 8, 521 S.E.2d 180 (1999).

In 2012, a Berkeley County jury convicted petitioner on two counts of first degree murder and one count of first degree arson following an apartment fire that killed petitioner's girlfriend and her three-year-old son. The jury did not recommend mercy on either of the murder convictions. Accordingly, the circuit court sentenced petitioner to two life terms of incarceration without the possibility of parole for the murder convictions, and to a determinate term of twenty years of incarceration for the arson conviction, to be served consecutively.

Petitioner appealed his convictions which this Court addressed in *State v. Prophet*, 234 W.Va. 33, 762 S.E.2d 602, *cert. denied*, __ U.S. __, 135 S.Ct. 683, 190 L.Ed.2d 396 (2014), raising the following assignments of error: (1) insufficient evidence; (2) improper cross examination of petitioner regarding a novel written by him; (3) improper comments by the prosecutor on petitioner's post-arrest silence; (4) erroneous refusal to give an instruction proffered by petitioner; (5) prosecutor's use of allegedly perjured testimony; (6) prosecutorial misconduct; and (7) judicial misconduct. This Court rejected the assignments of error and affirmed petitioner's convictions. 234 W.Va. at 40-47, 762 S.E.2d at 609-16.

On February 5, 2015, petitioner filed a petition for a writ of habeas corpus. By order entered February 12, 2015, the circuit court (a) found that petitioner's pro se petition was "not sufficient" for a fair adjudication of his grounds for relief; (b) appointed habeas counsel pursuant to Rule 4(b) of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings ("habeas rules") to file an amended petition; and (c) preserved petitioner's objections to the rulings therein. Habeas counsel filed petitioner's amended petition on May 12, 2015, and included a request that the circuit court consider petitioner's pro se petition as if it were "incorporate[d] by reference."[2]

The circuit court entered its June 24, 2015, order that summarily dismissed twenty-two of petitioner's grounds for relief. First, the circuit court dismissed petitioner's claim that, in essence, asked the court to effectively reverse this Court's decision in *Prophet* for allegedly erroneous rulings therein.

Second, the circuit court found that petitioner waived the following claims because both grounds were capable of being raised in his criminal appeal, but were not: (1) undue media coverage influenced the jury; and (2) the trial court erred in denying his motions to strike two jurors for cause.

Next, the circuit court found the following claims were previously and finally adjudicated in *Prophet*: (1) insufficient evidence; (2) improper questioning by the prosecutor regarding petitioner's post-arrest silence; (3) erroneous failure to exclude evidence of petitioner's novel; (4) prosecutor's use of allegedly perjured testimony; (5) erroneous refusal to give an instruction proffered by petitioner; and (6) prosecutorial misconduct.

---

[2]Based on our review of the record, we reject petitioner's claim that the circuit court did not give proper consideration to his pro se petition.

Fourth, the circuit court dismissed the following claims pursuant to Rule 4(c) of the habeas rules because petitioner did not support those grounds with "adequate factual support": (1) judicial misconduct; (2) mental competency at the times of the offenses; (3) mental competency to stand at trial; (4) suppression of exculpatory evidence; (5) prosecutorial falsification of transcript; (6) lack of preliminary hearing; (7) unfair grand jury composition and procedure; (8) defective indictment; (9) improper venue; (10) undue pre-indictment delay; (11) refusal to subpoena witnesses; (12) refusal to disclose witness notes following the witness's testimony; and (13) improper use of informants.

Finally, the circuit court ordered respondent to file an answer and respond to petitioner's claims of ineffective assistance of counsel and that he should receive a new trial because of the cumulative effect of various alleged instances of ineffective assistance.

Respondent filed an answer on September 21, 2015. Thereafter, the circuit court entered its October 28, 2015, order. The circuit court found that it had been "fully briefed" and that an evidentiary hearing "would not aid the [c]ourt" in adjudicating petitioner's ineffective assistance claims. The circuit court determined that neither petitioner's trial counsel nor his appellate counsel were ineffective. Accordingly, the circuit court denied petitioner's habeas petition.[3]

Petitioner appeals the circuit court's denial of habeas relief. We apply the following standard of review in habeas cases:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Rule 4(c) of the habeas rules provides, as follows:

> The petition shall be examined promptly by the judge to whom it is assigned. The court shall prepare and enter an order for summary dismissal of the petition if the contentions in fact or law relied upon in the petition have been previously and finally adjudicated or waived. The court's summary dismissal order shall contain specific findings of fact and conclusions of law as to the manner in which each ground raised in the petition has been previously and finally

---

[3]Petitioner assigns error to the circuit court's failure to address the cumulative effect of various alleged instances of ineffective assistance. Respondent counters that the circuit court had no reason to address that issue given its finding that petitioner did not prove any of the alleged instances of inadequate representation. We agree and find that the circuit court had no need to address the cumulative error doctrine.

3

adjudicated and/or waived. If the petition contains a mere recitation of grounds without adequate factual support, the court may enter an order dismissing the petition, without prejudice, with directions that the petition be refiled containing adequate factual support. The court shall cause the petitioner to be notified of any summary dismissal.

*See also* Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973) (holding that a circuit court may deny a habeas petition without a hearing "if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.").

We find that the circuit court's February 12, 2015, June 24, 2015, and October 28, 2015, orders adequately resolve all issues raised by petitioner in his habeas petition except for the following two issues which we now address. First, petitioner contends that the circuit court violated his constitutional right to represent himself, noting that throughout his habeas proceeding, he stated a preference to proceed pro se. "The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace." *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996). We find that despite his stated preference, petitioner opposed a motion by his attorney to withdraw as habeas counsel on the ground that allowing the attorney to withdraw would unduly delay his habeas proceeding. Petitioner also disputed his attorney's assessment that the attorney-client relationship was irreparably broken because he believed that contact between them had been "respectful and cordial." Thereafter, habeas counsel withdrew the motion and continued her representation of petitioner. Given that petitioner took inconsistent positions to whether he should be represented by an attorney, we conclude that petitioner waived his objection to the circuit court's appointment of habeas counsel.

Second, petitioner contends that our decision in *Prophet* did not address provisions of the United States Constitution and, instead, resolved that appeal solely based on provisions of the West Virginia Constitution. Respondent counters that the circuit court correctly determined that the relevant claims were fully and finally adjudicated in *Prophet*. We agree with respondent. When we rendered our decision in *Prophet*, we clearly considered both the United States and West Virginia Constitutions. For example, in addressing petitioner's claim that the prosecutor improperly commented on his post-arrest silence, we discussed the distinction between prearrest silence and post-arrest silence given that "impeachment by use of prearrest silence does not violate the Fourteenth Amendment [to the United States Constitution]." *Prophet*, 234 W.Va. at 43, 762 S.E.2d at 612 (quoting *Jenkins v. Anderson*, 447 U.S. 231, 240 (1980)) (Internal quotations and other citations omitted.). With regard to those issues under which only our own decisions are mentioned, we clearly considered the underlying principles of federal constitutional law. *See Adkins v. Leverette*, 161 W.Va. 14, 19-20, 239 S.E.2d 496, 499 (1977) (noting that "a state may not interpret its constitutional guarantee . . . below the federal [constitutional] level"). Therefore, we conclude that the circuit court did not err in finding that our decision in *Prophet* fully and finally adjudicated all issues raised therein.

Having reviewed the circuit court's February 12, 2015, "Order Appointing Counsel and

Directing Counsel for Petitioner to File An Amended Petition and Completed [*Losh*] List,"[4] June 24, 2015, "Order Summarily Dismissing Certain Grounds and Ordering Respondent to Answer," and October 28, 2015, "Order Denying Petition," we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to all other issues raised by petitioner in this appeal. The Clerk is directed to attach copies of the circuit court's February 12, 2015, June 24, 2015, and October 28, 2015, orders to this memorandum decision. We conclude that the circuit court did not abuse its discretion in denying petitioner's petition for a writ of habeas corpus.[5]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 21, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

---

[4]*See Losh v. McKenzie*, 166 W.Va. 762, 768-770, 277 S.E.2d 606, 611-12 (1981).

[5]Petitioner may raise those grounds dismissed by the circuit court pursuant to Rule 4(c) of the habeas rules in a subsequent petition provided that he supplies adequate factual support for those claims in accordance with that rule. However, we find that the circuit court overlooked that petitioner alleged judicial misconduct in *Prophet*. We rejected that assignment of error, finding that petitioner's accusations of bias were "frivolous." 234 W.Va. at 46, 762 S.E.2d at 616. Therefore, we find that petitioner may not re-raise the issue of judicial misconduct because that issue was previously and finally adjudicated by our decision in *Prophet*.

# IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.,
ANTONIO PROPHET,
    Petitioner,

v.

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,
    Respondent.

CIVIL CASE NO. 15-C-66
JUDGE LORENSEN

## ORDER APPOINTING COUNSEL AND DIRECTING COUNSEL FOR PETITIONER TO FILE AN AMENDED PETITION AND COMPLETED LOSH LIST

This matter came before the Court pursuant to a *Pro Se* petition for writ of habeas corpus.

After reviewing Petitioner's Petition Under W. Va. Code §53-4A-1 for Writ of Habeas Corpus, the Court withholds granting a hearing until receiving an Amended Petition, for all habeas corpus claims, filed by counsel.

> If, upon initial review of the petition and any exhibits in support thereof, the court determines that the petitioner may have grounds for relief but the petition, as filed, is not sufficient for the court to conduct a fair adjudication of the matters raised in the petition, the court shall appoint an attorney to represent the petitioner's claims in the matter, provided that the petitioner qualifies for the appointment of counsel under Rule 3(a). The court may order appointed counsel to file an amended petition for post-conviction habeas corpus relief within the time period set by the court.

W. VA. R. HABEAS 4(b).

THEREFORE, this Court consolidates any previously filed petitions from the petitioner and directs the hereby appointed *habeas* counsel, Lisa A. Green, Esq., to file an Amended Petition for Writ of Habeas Corpus, addressing all habeas corpus claims of the petitioner for all convictions which result in his current incarceration, within ninety (90) days.

172

FURTHER, the Court also withholds granting a hearing until Petitioner completes a *Losh* list. "Both petitioners and their lawyers can discuss these issues privately and can be expected to cooperate in filling out an appropriate form which contains the grounds enumerated, and requires the petitioner or his counsel to check the grounds waived." *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981). Counsel shall check each waived habeas allegation, and Petitioner shall initial each waived allegation on his *Losh* list. Petitioner shall submit the same to the Court within ninety (90) days.

The Court notes the objections and exceptions of the parties to any adverse ruling herein. The Circuit Clerk shall distribute attested copies of this order and the attached original Petition to the above-named appointed counsel and the Berkeley County Prosecuting Attorney, and a copy of the order to the Petitioner.

ENTER this 11 day of February, 2015.

MICHAEL D. LORENSEN, JUDGE
TWENTY-THIRD JUDICIAL CIRCUIT
BERKELEY COUNTY, WEST VIRGINIA

A TRUE COPY
ATTEST

Virginia M. Sine
Clerk Circuit Court
By:_____
Deputy Clerk

173

## IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel
ANTONIO PROPHET.,

     Petitioner,

v.

                                  CIVIL CASE NO. 15-C-66
                                  Underlying Criminal Case No.: 11-F-67
                                  JUDGE LORENSEN

DAVID BALLARD, Warden,
Mt. Olive Correctional Complex,

     Respondent.

## ORDER SUMMARILY DISMISSING CERTAIN GROUNDS AND ORDERING RESPONDENT TO ANSWER

Antonio Prophet, by counsel, Lisa A. Green, petitions the Court for a writ of habeas corpus seeking a new trial and alleges the following grounds violated one or more of Mr. Prophet's constitutional rights:

1) Cumulative errors.

2) Publicity unduly influenced jury.

3) Trial Court's failure to strike two jurors for cause.

4) Prosecution's use of false testimony.

5) Prosecution's impeachment of Petitioner on post arrest silence.

6) Trial Court's failure to exclude the introduction of fictional book authored by Petitioner.

7) Trial Court's failure to give jury instruction that opportunity alone is insufficient to prove guilt.

8) Prosecutorial misconduct.

9) Trial Court misconduct.

10) Insufficient evidence to support murder conviction.

11) Ineffective assistance of trial counsel.

12) Ineffective assistance of appellate counsel.

13) Failure by Supreme Court of Appeals of West Virginia to analyze trial errors on appeal.

14) Petitioner was not mentally competent at the time of the crime.

15) Petitioner was not mentally competent to stand for trial.

16) Prosecution suppression of exculpatory evidence.

17) Prosecution falsification of transcript.

18) No preliminary hearing.

19) Unfair composition and procedure of grand jury.

20) Defects in the indictment.

21) Improper venue.

22) Pre-indictment delay.

23) Refusal to subpoena witnesses.

24) Refusal to turn over witness notes after witness has testified.

25) Improper use of informers to convict.

# FACTS

In 2012, a Berkeley county jury convicted Mr. Prophet of murdering his girlfriend Angela Devonshire and her three year old son by setting her apartment on fire. In total, Mr. Prophet was convicted of two counts of first degree murder without a recommendation of mercy and one count of arson. Ms. Devonshire lived in a garage apartment adjacent to her parent's house with her two children: Andre, the other victim, who was three years old, and Daronte, who was six weeks old at the time of the offense. The garage apartment was located at the end of Angela's parents' driveway about 75 yards from her parents' house.

The evening of June 5, 2010 Petitioner went to spend the night at Ms. Devonshire's apartment. Sidney Devonshire III, Ms. Devonshire's brother, testified that he saw the Petitioner and Ms. Devonshire at the apartment at about 9:00 p.m., on June 5. Elizabeth Kay Devonshire, Angela's mother, testified that she awoke at 3:00 a.m., on June 6th and looked out the window toward her daughter's apartment. She testified that everything was quiet and that she noticed that her daughter's curtains were pulled tight. At 4:36 a.m. on June 6th a passing motorist called 911 and reported that Ms. Devonshire's apartment was on fire. A fire marshal testified at trial that the fire was incendiary in nature and originated in the middle of the living room floor of the apartment. Angela and Andre died in the fire and their bodies were found in the burned apartment. Although Andre's body was too badly burned to determine a cause of death, the medical examiner determined that Angela's throat was slit and that she died prior to the fire. The infant, Daronte, was found alive on Angela Devonshire's parents' patio in blood-spattered clothing. The blood on the baby's clothing was later determined by an expert to be the petitioner's. After the fire, Petitioner fled to North Carolina where he was arrested and had injuries on his hands.

Heather Aronhalt, a cashier at a convenience store, testified that she saw Mr. Prophet enter the store at 7 a.m. on June 6th, and that he had a cut on his neck and blood on him.

Katie Draughon, Mr. Prophet's ex-girlfriend who lived in Manassas, Virginia, testified that Mr. Prophet contacted her on the morning of June 6th and indicated that he was stranded in Berkeley County, West Virginia and needed a ride. Ms. Draughon hired a taxi to transport Mr. Prophet to Virginia. Ms. Draughon testified that she met briefly with Mr. Prophet in Virginia and supplied him with clothes, a cell phone, and a twenty-dollar bill and took Mr. Prophet to the train station.

Joseph Medina and Anica Small, who was with Joseph Medina on June 5th and 6th, both testified that Mr. Medina received text messages from Mr. Prophet at around 4:30 a.m. saying that he needed help. Joseph Medina testified that he and the petitioner had been friends since grade school. Mr. Medina testified that he initially ignored text messages but did call the petitioner later that day. According to Mr. Medina, Mr. Prophet told him that Ms. Devonshire had been going through his pockets and "stuff happened."

Mr. Prophet testified he came to Martinsburg, West Virginia, at the behest of Joseph Medina, in May 2010. At that time, Mr. Medina was staying with a woman named Shannon. In mid-May, Mr. Prophet met Ms. Devonshire at Shannon's house when Angela came there to buy drugs from Mr. Medina. Mr. Prophet and Ms. Devonshire developed a relationship. Prior to June 5, 2010, Mr. Prophet visited Ms. Devonshire's apartment eight or nine times and had spent the night there on five or six occasions.

Mr. Prophet testified that on June 3rd, Mr. Medina stole Chareese Davis's laptop and gave it to Mr. Prophet to hold while Mr. Medina extorted money from Ms. Davis in exchange for her computer. Mr. Prophet claims he became angry at Mr. Medina for involving him in the

extortion scheme and an argument ensued wherein Mr. Medina threatened to harm Mr. Prophet, Ms. Devonshire, and her family family. Mr. Prophet testified that after the argument, he placed the laptop in some weeds for Mr. Medina to retrieve. Mr. Prophet then called 911 anonymously to report Mr. Medina's threats and was directed by the 911 operator to call the Martinsburg Police Department which directed him to call the Berkeley County Sheriff's Department.

Mr. Prophet testified that on June 5th, Mr. Medina called him to wish him a happy birthday, but he felt the call was made for the purpose of determining Mr. Prophet's location. Mr. Prophet testified that at 12:30 a.m., on June 6th, Angela woke up Mr. Prophet to tell him there were two guys at the door who would not leave. After the men told Mr. Prophet they were looking for Ms. Devonshire to collect a debt, Mr. Prophet convinced them to leave, but the men promised to return. Mr. Prophet inquired about the two men and Ms. Devonshire denied knowing them.

Mr. Prophet testified that later on, as he and Ms. Devonshire were on the porch smoking cigarettes one of the men looking for Ms. Devonshire, "Boogy," attacked Mr. Prophet and Ms. Devonshire. Mr. Prophet testified that a fight ensued between him and Boogy who had a knife, and that the fight worked its way inside. According to Mr. Prophet, the other man looking to collect a debt from Ms. Devonshire appeared wearing a Baltimore Orioles baseball cap and holding a gun. Mr. Prophet testified that as the two attackers gained control, Boogy took him downstairs for the purpose of breaking into the garage to steal something and that when he arrived back upstairs in the apartment, Angela was lying on a mattress with her throat slit and the three-year-old Andre was beside her in a pool of blood. According to Mr. Prophet, at that point he sprayed the gun-wielding Baltimore Orioles-capped man with mace and fled the apartment. Mr. Prophet testified that he then ran through the woods, shots were fired at him and he heard the

voice of a third man whom he thought may have been Mr. Medina. Mr. Prophet testified that, upon seeing smoke coming from the apartment, he ran back into the apartment, grabbed six-week-old Daronte, and placed him on Angela's parents' patio. Mr. Prophet purported to then bang on the Devonshires' door and when nobody answered, he panicked and fled. Mr. Prophet admitted that he did not call emergency services or law enforcement and that he told no one about the events surrounding the victims' deaths and the fire until he testified at trial

The prosecutor vigorously Mr. Prophet about a novel that Mr. Prophet wrote several years earlier titled *Enter the Fire: Seven Days In the Life*. In a prior stipulation, the parties had agreed that the State could not use the novel in the State's ease-in-chief but that the State would be free, subject to the rules of evidence, to refer to the novel in rebuttal. When the prosecutor questioned Mr. Prophet about the novel, Mr. Prophet's counsel objected on the basis of the stipulation and relevancy. The trial court determined that the stipulation did not prevent the novel's use during cross-examination of the petitioner and further, that the novel was relevant to the petitioner's credibility.

The circuit court denied Mr. Prophet's post-trial motions for acquittal and for a new trial, and the court sentenced the petitioner to life in prison without the possibility of parole for each first-degree murder conviction and a determinate term of twenty years for the arson conviction, with the sentences to run consecutively. The court also awarded $11,220.61 in restitution.

Mr. Prophet then appealed his conviction to the West Virginia Supreme Court of Appeals alleging 1) insufficient evidence to support conviction, 2) undue prejudice from cross-examination of Mr. Prophet on his novel, 3) prosecutor's comments on post-arrest silence violated due process, 4) circuit court erred by not giving proffered instruction on opportunity, 5) prosecutor knowingly presented perjured testimony, 6) prosecutor made improper remarks, and

7) prosecutor engaged in misconduct. *State v. Prophet*, 234 W. Va. 33, 762 S.E.2d 602, *cert. denied*, 135 S. Ct. 683, 190 L. Ed. 2d 396 (2014) *reh'g denied*, 135 S. Ct. 1035, 190 L. Ed. 2d 900 (2015). The West Virginia Supreme Court affirmed the trial court's conviction and found none of the purported errors. *Id.*

Mr. Prophet then appealed to the United States Supreme Court which denied the writ of certiorari. *Prophet v. West Virginia*, 135 S. Ct. 683, 684, 190 L. Ed. 2d 396 (2014). Mr. Prophet petitioned the United States Supreme Court to reconsider and the Supreme Court denied a rehearing. *Prophet v. West Virginia*, 135 S. Ct. 1035, 190 L. Ed. 2d 900 (2015). Meanwhile, Mr. Prophet petitioned this court for a writ of habeas corpus and on May 12, 2015 Petitioner, by counsel Lisa A. Green, filed his Amended Petition and Memorandum in Support which was timely filed and properly verified by the Petitioner.

<u>Conclusions of Law</u>

Petitions for writs of habeas corpus are "civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case." W. Va. Code § 53-4A-1(a); *State ex rel. Harrison v. Coiner*, 154 W. Va. 467 (1970). Persons convicted of crimes and currently incarcerated, may file a petition for writ of habeas corpus contending one or more of the following: 1) a denial or infringement of the petitioner's constitutional rights rendering a conviction or sentence void, 2) lack of jurisdiction, 3) the sentence is beyond the authorized maximum, and 4) "the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common law or any statutory provision of this state." W. Va. Code § 53-4A-1(a). Claims that have been "previously and finally adjudicated," either on direct appeal or in a previous post-conviction habeas proceeding, may not

form the basis for habeas relief. W. Va. Code §53-4A-1(b); *Bowman v. Leverette*, 169 W. Va. 589, 289 S.E.2d 435 (1982).

A claim adjudicated or waived in a previous post-conviction proceeding is precluded when the petitioner was either represented by counsel or knowingly waived his right to be represented by counsel and the proceeding was a complete omnibus habeas corpus proceeding. *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981); *Gibson v. Dale*, 173 W. Va. 681, 319 S.E.2d 91 (1972). A claim "shall be deemed to have been previously and finally adjudicated only when at some point in the proceedings which resulted in the conviction and sentence . . . , or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, there was a decision on the merits thereof after a full and fair hearing thereon . . . unless said decision upon the merits is clearly wrong." W. Va. Code § 53-4A-1(b) Nonetheless, "*W.Va.Code*, 53-4A-1(d) allows a petition for post-conviction habeas corpus relief to advance contentions or grounds which have been previously adjudicated only if those contentions or grounds are based upon subsequent court decisions which impose new substantive or procedural standards in criminal proceedings that are intended to be applied retroactively." *Bowman v. Leverette*, 169 W. Va. 589, 589, 289 S.E.2d 435, 436 (1982). A claim waived is any ground for habeas relief that could have been advanced on direct appeal or in a previous post-conviction proceeding but was not advanced. W. Va. Code § 53-4A-1(c). Should a petitioner wish to raise a ground waived in a subsequent proceeding, it is the petitioner that bears the burden of demonstrating that such waiver was less than knowing and intelligent. *Ford v. Coiner*, 156 W. Va. 362, 196 S.E.2d 91 (1972).

A habeas corpus proceeding is markedly different from a direct appeal or writ of error in that only errors involving constitutional violations shall be reviewed. Syl. Pt. 2., *Edwards v.*

*Leverette*, 163 W. Va. 571 (1979). Petitions for writ of habeas corpus are governed in part by West Virginia Code §53-4A-1. The habeas corpus statute "contemplates the exercise of discretion by the court." *Perdue v. Coiner*, 156 W. Va. 467 (1973). The circuit court denying or granting relief in a habeas corpus proceeding must make specific findings of fact and conclusions of law relating to each contention raised by the petitioner. *State ex rel. Watson v. Hill*, 200 W. Va. 201 (1997). To sustain his Petition, Petitioner must prove his claims by a preponderance of the evidence.

"The court shall prepare and enter an order for summary dismissal of the petition if the contentions in fact or law relied upon in the petition have been previously and finally adjudicated or waived." W. Va. R. Habeas 4(c). What's more, if "the petition contains a mere recitation of grounds without adequate factual support, the court may enter an order dismissing the petition, without prejudice, with directions that the petition be refiled containing adequate factual support." *Id.* Finally, for "all petitions not dismissed summarily as provided in Rule 4(c), the court shall order the respondent to file an answer. . ." W. Va. R. Habeas 4(d).

If the court upon review of the petition, exhibits, affidavits, or other documentary evidence is satisfied that petitioner is not entitled to relief, the court may deny a petition for writ of habeas corpus without an evidentiary hearing. Syl. Pt. 1, *Perdue v. Coiner*, 156 W. Va. 467 (1973); *State ex rel. Waldron v. Scott*, 222 W. Va. 122 (2008). Upon denying a petition for writ of habeas corpus the court must make specific findings of fact and conclusions of law as to each contention raised by the petitioner, and must also provide specific findings as to why an evidentiary hearing was unnecessary. Syl. Pt. 1, *State ex rel. Watson v. Hill, 200 W. Va. 201 (1997)*; Syl. Pt. 4., *Markley v. Coleman*, 215 W. Va. 729 (2004); R. Hab. Corp. 9(a).

### ANALYSIS

1) **Cumulative errors.**

Respondent is directed to answer Ground 1 as it pertains to cumulative errors regarding ineffective assistance of counsel within 90 days of the date of this order with either a brief or proposed order.

2) **Ground 2 – publicity unduly influenced jury – is DISMISSED because the Petitioner waived this issue by not raising the issue either in trial or on direct appeal.**

Mr. Prophet contends that he was denied his right under the West Virginia and United States Constitutions to a fair and impartial jury due to pre-trial and trial publicity. Petitioner cites that many members of the jury panel were tainted by twos years of media coverage. In support of this claim, Petitioner cites voir dire that many potential jurors had heard of the case and cites a pre-trial public opinion survey of Berkeley County residents demonstrating public knowledge and opinion of the case.

W. Va. Code Ann. § 53-4A-1(c) states in pertinent part:

[A] contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds before trial, at trial, or on direct appeal (whether or not said petitioner actually took an appeal), or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, unless such contention or contentions and grounds are such that, under the Constitution of the United States or the Constitution of this State, they cannot be waived under the circumstances giving rise to the alleged waiver.

Here, Petitioner waived this claim of error by knowingly and intelligently failing to advance this contention at trial and on appeal. Accordingly, Ground 2 is **DISMISSED.**

3) **Ground 3 – trial Court's failure to strike two jurors for cause – is DISMISSED because the Petitioner waived this issue by not raising the issue either in trial or on direct appeal.**

ORDER OF PARTIAL DISMISSAL OF HABEAS CORPUS

Petitioner argues that the trial Court should have struck two jurors for cause. Petitioner alleges he had to waste one of his strikes on one of the jurors and that the other juror ended up sitting on the case. Petitioner's trial counsel moved to strike both jurors for cause.

The Court notes that:

> A trial court's failure to remove a biased juror from a jury panel does not violate a defendant's right to a trial by an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 14 of Article III of the West Virginia Constitution. In order to succeed in a claim that his or her constitutional right to an impartial jury was violated, a defendant must affirmatively show prejudice.

Syl. Pt. 2, *State ex rel. Farmer v. McBride*, 224 W. Va. 469, 686 S.E.2d 609, 612 (2009); Syl. Pt. 7, *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995); Syl. Pt. 6, *State ex rel. Quinones v. Rubenstein*, 218 W.Va. 388, 624 S.E.2d 825 (2005). Petitioner alleges prejudice, but offers little to affirmatively show prejudice.

Nonetheless, Petitioner waived this purported error. W. Va. Code Ann. § 53-4A-1(c) states in pertinent part:

> [a] contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been waived when the petitioner could have advanced, but intelligently and knowingly failed to advance, such contention or contentions and grounds before trial, at trial, or on direct appeal (whether or not said petitioner actually took an appeal), or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, unless such contention or contentions and grounds are such that, under the Constitution of the United States or the Constitution of this State, they cannot be waived under the circumstances giving rise to the alleged waiver.

Here, Petitioner waived this claim of error by knowingly and intelligently failing to advance this contention on appeal. Accordingly, Ground 3 is **DISMISSED**.

4) **Ground 4 – prosecution's use of false testimony – is DISMISSED because this issue was fully and finally adjudicated on appeal.**

Petitioner asserts that he was deprived of his constitutional right to due process and to a fair trial when the prosecutor used false testimony. A three part test applies a prosecutor's use of false testimony; a defendant must prove 1) presentation of false testimony, 2) prosecutor's knowledge of falsity, and 3) material effect on verdict. *State v. Prophet*, 234 W. Va. 33, 762 S.E.2d 602 cert. denied, 135 S. Ct. 683, 190 L. Ed. 2d 396 (2014) *reh'g denied*, 135 S. Ct. 1035, 190 L. Ed. 2d 900 (2015). The West Virginia Supreme Court, on the appeal of this case, using the three factor test found that Mr. Prophet failed to show that the prosecutor presented false testimony. *Id.* 234 W. Va. at ___, 762 S.E.2d at 614-15.

Because the issue of the prosecutor using false testimony has been fully and finally adjudicated on the merits and the decision is not clearly wrong, Ground 4 is **DISMISSED**.

**5) Ground 5 – prosecution's impeachment of Petitioner on post-arrest silence – is DISMISSED because this issue was fully and finally adjudicated on appeal.**

Petitioner asserts that he was deprived of his constitutional right to due process and to a fair trial when the prosecutor impeached Petitioner through unfair means by questioning Petitioner about post arrest silence. On appeal of this case citing Syl. Pt. 1, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), the West Virginia Supreme Court noted that

> Under the Due Process Clause of the *West Virginia Constitution*, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury.

Syl. Pt. 4, *State v. Prophet*, 234 W. Va. 33, 762 S.E.2d 602, *cert. denied*, 135 S. Ct. 683, 190 L. Ed. 2d 396 (2014) *reh'g denied*, 135 S. Ct. 1035, 190 L. Ed. 2d 900 (2015). However, the Supreme Court noted that pre-arrest silence is distinguished from post-arrest silence, because impeachment by use of pre-arrest silence does not violate due process or the right to remain

silent. *Id.* (citing *State v. Walker,* 207 W.Va. 415, 419, 533 S.E.2d 48, 52 (2000); *Jenkins v. Anderson,* 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86, 96 (1980)).

On appeal the West Virginia Supreme Court using the same record that is presently before this Court found that the prosecutor did not improperly use Petitioner's post-arrest silence to impeach Petitioner on cross-examination. Accordingly, this issue was fully and finally adjudicated on the merits. Because this was decided on the merits on appeal and the decision was not clearly wrong, Ground 5 is **DISMISSED**.

6) **Ground 6 – trial court's failure to exclude the introduction of fictional book authored by Petitioner – is DISMISSED because this issue was fully and finally adjudicated on appeal.**

Petitioner asserts that he was deprived of his constitutional rights to due process and equal protection when the trial court failed to exclude reference to and cross examination on Petitioner's fictional crime book *Enter the Fire: Seven Days in the Life*. Petitioner made this very argument on appeal to the Supreme Court of Appeals of West Virginia. The Supreme Court found, citing Syl. pt. 4, *State v. Carduff,* 142 W.Va. 18, 93 S.E.2d 502 (1956), that "cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice." Syl. Pt. 3, *State v. Prophet,* 234 W. Va. 33, 762 S.E.2d 602, *cert. denied,* 135 S. Ct. 683, 190 L. Ed. 2d 396 (2014) *reh'g denied,* 135 S. Ct. 1035, 190 L. Ed. 2d 900 (2015). The Supreme Court found that the trial court's decision to permit the State to cross-examine Petitioner on his novel did not result in an abuse or injustice, nor did it result in undue prejudice to Mr. Prophet. *Id.* Thus, because the issue of trial court's failure to exclude the introduction of a fictional book authored by Petitioner has been

fully and finally adjudicated on the merits, and the decision is not clearly wrong, Ground 6 is **DISMISSED**.

> 7) **Ground 7 – Trial Court's failure to give jury instruction that opportunity alone is insufficient to prove guilt. – is DISMISSED because this issue was fully and finally adjudicated on appeal.**

Petitioner asserts that he was deprived of his constitutional rights to due process and a fair trial when the trial court refused to give a jury instruction that opportunity alone is insufficient to prove guilt. Petitioner alleges that the trial court erred by refusing a jury instruction from *State v. Dobbs*, 163 W.Va. 630, 635, 259 S.E.2d 829, 832 (1979), which says that "[p]roof of opportunity to commit a crime is not sufficient to establish guilt; the evidence must exclude all reasonable opportunity by others to have committed it." (Citations omitted).

On appeal in this case, the Supreme Court of Appeals of West Virginia found "that the circuit court's refusal to give the instruction from *Dobbs* is not error because this language is no longer a correct statement of the law." *State v. Prophet*, 234 W. Va. 33, 762 S.E.2d 602, 614 *cert. denied*, 135 S. Ct. 683, 190 L. Ed. 2d 396 (2014) *reh'g denied*, 135 S. Ct. 1035, 190 L. Ed. 2d 900 (2015). The Court noted that *Dobbs* was overruled in *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). *Id.*

The Supreme Court found that the trial court's decision not to give the proffered instruction on opportunity was not error. *Id.* Thus, the issue has been fully and finally adjudicated on the merits, and the decision is not clearly wrong. Accordingly, this Court will not further analyze this issue, and Ground 7 is **DISMISSED**.

> 8) **Ground 8 – Prosecutorial misconduct – is DISMISSED because this issue was fully and finally adjudicated on appeal.**

Petitioner asserts that he was denied his rights to due process, to a fair trial, to assistance of counsel and to freedom from self-incrimination because of multiple instances of prosecutorial misconduct.

First, Petitioner alleges that the prosecutor's inquiries into his post arrest silence were improper. This is a restatement of Ground 5 which the Court DISMISSES as explained above.

As to the other nine allegations of prosecutorial misconduct, Mr. Prophet makes only conclusory statements of the grounds without showing evidence of actual prejudice.

The Court notes the unique role a prosecutor has in our system of justice:

> The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

Syl. Pt. 3, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977). However, a conviction will not be overturned by because of remarks made by a prosecutor without clearly prejudicing the jury. *State v. Hamrick*, 216 W. Va. 477, 478-79, 607 S.E.2d 806, 807-08 (2004).

Because the Petition contains a mere recitation of grounds without adequate factual support and no showing of prejudice, Ground 8 is **DISMISSED**.

9) **Ground 9 – Trial Court Misconduct – is DISMISSED for the reasons set forth below.**

Petitioner asserts that he was denied his rights to due process, to a fair trial, to assistance of counsel, freedom from self-incrimination, and equal protection because the trial court engaged in misconduct.

First, Petitioner alleges that the trial court's comments on the admissibility and probative value of evidence at a pretrial hearing constitute misconduct. Petitioner fails to allege that these

comments prejudiced Petitioner. The comments were not made in the presence of the jury and are the very types of comments that a judge makes when determining the admissibility of evidence. Accordingly, this is just a mere recitation of a ground without providing adequate factual support. Thus, Ground 9A is **DISMISSED.**

Second, Petitioner alleges that the trial court engaged in misconduct when it rejected a plea agreement by one of the state's witnesses, Joseph Medina, in an effort to coerce Mr. Medina into cooperating with the state. Petitioner fails to cite any authority on how the judges use of discretion in accepting or rejecting a plea constitutes misconduct. Moreover, Petitioner fails to show any prejudice. Petitioner states that the plea agreement was "almost two years since Mr. Medina's initial interview with the police in which Mr. Medina practically bent over backwards in his attempts to implicate the Petitioner in the crime at issue." Amended Petition at 66. Mr. Medina had already bent over backwards to implicate the Petitioner; thus, there is no demonstration of prejudice. Accordingly, Ground 9B is **DISMISSED.**

Under Ground 9F, Petitioner alleges that the tone of the trial court when directing Petitioner to answer a question posed by the prosecutor constituted misconduct and caused Petitioner Prejudice. Petitioner cites no rule or law that the Court violated, thus Ground 9F is **DISMISSED.**

Ground 9H alleges that the trial court coached the prosecutor, but provides no supporting facts to support this claim. Ground 9I alleges that the trial court engaged in "subtle cues of bias" but provides almost no facts to support the claim. Thus, Grounds 9H and 9I are **DISMISSED.**

Finally, the remainder of Petitioner's allegations of judicial misconduct are mere recitations other purported errors including: misconduct for failing to strike 2 jurors for cause (Ground 3 *supra*), misconduct by permitting the introduction of Petitioner's fictional book into

evidence (Ground 6 *supra*), misconduct by permitting prosecutor to inquire about post-arrest silence (Ground 5 *supra*), misconduct by failing to correct prosecutorial misconduct (Ground 8 *supra*). Because these allegations are dismissed above, there was no judicial misconduct. For that reason and because adequate facts demonstrating prejudice were not alleged these grounds are **DISMISSED.**

10) **Ground 10 – Insufficient evidence to support murder conviction – is DISMISSED because this issue was fully and finally adjudicated on appeal.**

Petitioner alleges that there was insufficient evidence to convict him at trial. Petitioner is not presenting newly discovered evidence; rather he is simply contesting the sufficiency of evidence at trial. The Supreme Court already addressed this argument and found that sufficient evidence existed to support a murder conviction. *State v. Prophet*, 234 W. Va. 33, 762 S.E.2d 602, 609 *cert. denied*, 135 S. Ct. 683, 190 L. Ed. 2d 396 (2014) *reh'g denied*, 135 S. Ct. 1035, 190 L. Ed. 2d 900 (2015). Thus, the issue has been fully and finally adjudicated on the merits, and the decision is not clearly wrong. Accordingly, this Court will not further analyze this issue, and Ground 10 is **DISMISSED.**

11) **Ineffective assistance of trial counsel.**

Respondent is directed to respond to Ground 11 within 90 days of the date of this order with either a brief or proposed order.

12) **Ineffective assistance of appellate counsel.**

Respondent is directed to respond to Ground 11 within 90 days of the date of this order with either a brief or proposed order.

13) **The Court dismisses Ground 13 – Failure by Supreme Court of Appeals of West Virginia to meaningfully analyze trial errors on appeal – because there is no evidence to support the claim.**

Petitioner, again wishes to reargue the same purported errors that have been argued and reargued in various stages of this case and argued multiple different ways above. Here, Petitioner does not provide even the slightest bit of legal or factual reasoning that would permit this Court to in essence reverse the West Virginia Supreme Court. Accordingly, Ground 13 is DISMISSED.

14) The Court dismisses Ground 15 – mental competency at time of crime – because the Petition contains a mere recitation of this ground without any factual support.

15) The Court dismisses Ground 15 – mental competency to stand for trial – because the Petition contains a mere recitation of this ground without any factual support.

16) The Court dismisses Ground 16 – prosecution suppression of exculpatory evidence – because the Petition contains a mere recitation of this ground without any factual support.

17) The Court dismisses Ground 17 – prosecution falsification of transcript – because the Petition contains a mere recitation of this ground without any factual support.

18) The Court dismisses Ground 18 – no preliminary hearing – because the Petition contains a mere recitation of this ground without any factual support.

19) The Court dismisses Ground 19 – unfair composition and procedure of grand jury – because the Petition contains a mere recitation of this ground without any factual support.

20) The Court dismisses Ground 20 – defects in the indictment – because the Petition contains a mere recitation of this ground without any factual support.

21) The Court dismisses Ground 21 – improper venue – because the Petition contains a mere recitation of this ground without any e factual support.

22) The Court dismisses Ground 22 – pre-indictment delay– because the Petition contains a mere recitation of this ground without any factual support.

23) The Court dismisses Ground 23 – refusal to subpoena witnesses – because the Petition contains a mere recitation of this ground without any factual support.

24) The Court dismisses Ground 24 – refusal to turn over witness notes after witness has testified – because the Petition contains a mere recitation of this ground without any factual support.

25) The Court dismisses Ground 25 – improper use of informers to convict – because the Petition contains a mere recitation of this ground without any factual support.

### Conclusion

Grounds 2 through 10 and 13 though 25 are **DISMISSED**. The state is **ORDERED** to answer and substantively respond to Grounds 11 and 12 and in limited part to Ground 1 within 90 days of this Order. These issues will not be further addressed by this Court in any proceedings. Petitioner may file a short reply brief within 30 days of a response being filed. Parties are encouraged to provide the Court with digital and searchable copies of briefs and proposed orders. The Court withholds granting a hearing until all briefs have been filed.

The Clerk shall enter this Order as of the date written below and shall transmit attested copies to all counsel and parties of record, including the Prosecuting Attorney for Berkeley County and Lisa A. Green, Esq., counsel for the Petitioner.

ENTER this 24 day of June, 2014.

_____
MICHAEL D. LORENSEN, JUDGE
TWENTY-THIRD JUDICIAL CIRCUIT
BERKELEY COUNTY, WEST VIRGINIA

IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel
ANTONIO PROPHET.,

    Petitioner,

v.

                                CIVIL CASE NO. 15-C-66
                                Underlying Criminal Case No.: 11-F-67
                                JUDGE LORENSEN

DAVID BALLARD, Warden,
Mt. Olive Correctional Complex,

    Respondent.

## ORDER DENYING PETITION

Antonio Prophet, by counsel, Lisa A. Green, petitions the Court for a writ of habeas corpus seeking a new trial. The Court, on June 24, 2015, dismissed 23 of Mr. Prophet's 25 claims for relief and ordered the Respondent to answer the remaining two claims – ineffective assistance of trial counsel and ineffective assistance of appellate counsel. The Respondent answered on September 21, 2015, and moved to dismiss the two remaining claims. Mr. Prophet Replied in support of the Petition on October 22, 2015.

### FACTS

In 2012, a Berkeley county jury convicted Mr. Prophet of murdering his girlfriend Angela Devonshire and her three year old son by setting her apartment on fire. At trial, Mr. Prophet was represented by Craig Manford and Christopher Prezioso. In total, Mr. Prophet was convicted of two counts of first degree murder without a recommendation of mercy and one count of arson. Ms. Devonshire lived in a garage apartment adjacent to her parent's house with

her two children: Andre, the other victim, who was three years old, and Daronte, who was six weeks old at the time of the offense. The garage apartment was located at the end of Angela's parents' driveway about 75 yards from her parents' house.

The evening of June 5, 2010 Petitioner went to spend the night at Ms. Devonshire's apartment. Sidney Devonshire III, Ms. Devonshire's brother, testified that he saw the Petitioner and Ms. Devonshire at the apartment at about 9:00 p.m., on June 5. Elizabeth Kay Devonshire, Angela's mother, testified that she awoke at 3:00 a.m., on June 6th and looked out the window toward her daughter's apartment. She testified that everything was quiet and that she noticed that her daughter's curtains were pulled tight. At 4:36 a.m. on June 6th a passing motorist called 911 and reported that Ms. Devonshire's apartment was on fire. A fire marshal testified at trial that the fire was incendiary in nature and originated in the middle of the living room floor of the apartment. Angela and Andre died in the fire and their bodies were found in the burned apartment. Although Andre's body was too badly burned to determine a cause of death, the medical examiner determined that Angela's throat was slit and that she died prior to the fire. The infant, Daronte, was found alive on Angela Devonshire's parents' patio in blood-spattered clothing. The blood on the baby's clothing was later determined by an expert to be the petitioner's. After the fire, Petitioner fled to North Carolina where he was arrested and had injuries on his hands.

Heather Aronhalt, a cashier at a convenience store, testified that she saw Mr. Prophet enter the store at 7 a.m. on June 6th, and that he had a cut on his neck and blood on him.

Katie Draughon, Mr. Prophet's ex-girlfriend who lived in Manassas, Virginia, testified that Mr. Prophet contacted her on the morning of June 6th and indicated that he was stranded in Berkeley County, West Virginia and needed a ride. Ms. Draughon hired a taxi to transport Mr.

Prophet to Virginia. Ms. Draughon testified that she met briefly with Mr. Prophet in Virginia and supplied him with clothes, a cell phone, and a twenty-dollar bill and took Mr. Prophet to the train station.

Joseph Medina and Anica Small, who was with Joseph Medina on June 5th and 6th, both testified that Mr. Medina received text messages from Mr. Prophet at around 4:30 a.m. saying that he needed help. Joseph Medina testified that he and the petitioner had been friends since grade school. Mr. Medina testified that he initially ignored text messages but did call the petitioner later that day. According to Mr. Medina, Mr. Prophet told him that Ms. Devonshire had been going through his pockets and "stuff happened."

Mr. Prophet testified he came to Martinsburg, West Virginia, at the behest of Joseph Medina, in May 2010. At that time, Mr. Medina was staying with a woman named Shannon. In mid-May, Mr. Prophet met Ms. Devonshire at Shannon's house when Angela came there to buy drugs from Mr. Medina. Mr. Prophet and Ms. Devonshire developed a relationship. Prior to June 5, 2010, Mr. Prophet visited Ms. Devonshire's apartment eight or nine times and had spent the night there on five or six occasions.

Mr. Prophet testified that on June 3rd, Mr. Medina stole Chareese Davis's laptop and gave it to Mr. Prophet to hold while Mr. Medina extorted money from Ms. Davis in exchange for her computer. Mr. Prophet claims he became angry at Mr. Medina for involving him in the extortion scheme and an argument ensued wherein Mr. Medina threatened to harm Mr. Prophet, Ms. Devonshire, and her family. Mr. Prophet testified that after the argument, he placed the laptop in some weeds for Mr. Medina to retrieve. Mr. Prophet then called 911 anonymously to report Mr. Medina's threats and was directed by the 911 operator to call the Martinsburg Police Department which directed him to call the Berkeley County Sheriff's Department.

Mr. Prophet testified that on June 5th, Mr. Medina called him to wish him a happy birthday, but he felt the call was made for the purpose of determining Mr. Prophet's location. Mr. Prophet testified that at 12:30 a.m., on June 6th, Angela woke up Mr. Prophet to tell him there were two guys at the door who would not leave. After the men told Mr. Prophet they were looking for Ms. Devonshire to collect a debt, Mr. Prophet convinced them to leave, but the men promised to return. Mr. Prophet inquired about the two men and Ms. Devonshire denied knowing them.

Mr. Prophet testified that later on, as he and Ms. Devonshire were on the porch smoking cigarettes one of the men looking for Ms. Devonshire, "Boogy," attacked Mr. Prophet and Ms. Devonshire. Mr. Prophet testified that a fight ensued between him and Boogy who had a knife, and that the fight worked its way inside. According to Mr. Prophet, the other man looking to collect a debt from Ms. Devonshire appeared wearing a Baltimore Orioles baseball cap and holding a gun. Mr. Prophet testified that as the two attackers gained control, Boogy took him downstairs for the purpose of breaking into the garage to steal something and that when he arrived back upstairs in the apartment, Angela was lying on a mattress with her throat slit and the three-year-old Andre was beside her in a pool of blood. According to Mr. Prophet, at that point he sprayed the gun-wielding Baltimore Orioles-capped man with mace and fled the apartment. Mr. Prophet testified that he then ran through the woods, shots were fired at him and he heard the voice of a third man whom he thought may have been Mr. Medina. Mr. Prophet testified that, upon seeing smoke coming from the apartment, he ran back into the apartment, grabbed six-week-old Daronte, and placed him on Angela's parents' patio. Mr. Prophet purported to then bang on the Devonshires' door and when nobody answered, he panicked and fled. Mr. Prophet

admitted that he did not call emergency services or law enforcement and that he told no one about the events surrounding the victims' deaths and the fire until he testified at trial

The prosecutor cross examined Mr. Prophet about a novel that Mr. Prophet wrote several years earlier titled *Enter the Fire: Seven Days in the Life.* In a prior stipulation, the parties had agreed that the State could not use the novel in the State's case-in-chief, but that the State would be free, subject to the rules of evidence, to refer to the novel in rebuttal. When the prosecutor questioned Mr. Prophet about the novel, Mr. Prophet's counsel objected on the basis of the stipulation and relevancy. The trial court determined that the stipulation did not prevent the novel's use during cross-examination of the petitioner and further, that the novel was relevant to the petitioner's credibility.

The circuit court denied Mr. Prophet's post-trial motions for acquittal and for a new trial, and the court sentenced the petitioner to life in prison without the possibility of parole for each first-degree murder conviction and a determinate term of twenty years for the arson conviction, with the sentences to run consecutively. The court also awarded $11,220.61 in restitution.

## Post-Trial Litigation

Mr. Prophet then appealed his conviction to the West Virginia Supreme Court of Appeals alleging 1) insufficient evidence to support conviction, 2) undue prejudice from cross-examination of Mr. Prophet on his novel, 3) prosecutor's comments on post-arrest silence violated due process, 4) circuit court erred by not giving proffered instruction on opportunity, 5) prosecutor knowingly presented perjured testimony, 6) prosecutor made improper remarks, and 7) prosecutor engaged in misconduct. *State v. Prophet*, 234 W. Va. 33, 762 S.E.2d 602, *cert. denied,* 135 S. Ct. 683, 190 L. Ed. 2d 396 (2014) *reh'g denied,* 135 S. Ct. 1035, 190 L. Ed. 2d

900 (2015). The West Virginia Supreme Court affirmed the trial court's conviction and found none of the purported errors. *Id.*

Mr. Prophet then appealed to the United States Supreme Court which denied the writ of certiorari. *Prophet v. West Virginia,* 135 S. Ct. 683, 684, 190 L. Ed. 2d 396 (2014). Mr. Prophet petitioned the United States Supreme Court to reconsider and the Supreme Court denied a rehearing. *Prophet v. West Virginia,* 135 S. Ct. 1035, 190 L. Ed. 2d 900 (2015). Meanwhile, Mr. Prophet petitioned this court for a writ of habeas corpus and on May 12, 2015 Petitioner, by counsel Lisa A. Green, filed his Amended Petition and Memorandum in Support which was timely filed and properly verified by the Petitioner.

Subsequently, Mr. Prophet petitioned for a writ of habeas corpus and this Court dismissed 23 of Mr. Prophet's 25 claims for relief and ordered the Respondent to answer the remaining two claims – ineffective assistance of trial counsel and ineffective assistance of appellate counsel. After this Court dismissed 23 of the claims, Mr. Prophet moved the Court to reconsider the dismissal, and the Court denied the motion.

### Conclusions of Law

Petitions for writs of habeas corpus are "civil in character and shall under no circumstances be regarded as criminal proceedings or a criminal case." W. Va. Code § 53-4A-1(a); *State ex rel. Harrison v. Coiner,* 154 W. Va. 467 (1970). Persons convicted of crimes and currently incarcerated, may file a petition for writ of habeas corpus contending one or more of the following: 1) a denial or infringement of the petitioner's constitutional rights rendering a conviction or sentence void, 2) lack of jurisdiction, 3) the sentence is beyond the authorized maximum, and 4) "the conviction or sentence is otherwise subject to collateral attack upon any

ground of alleged error heretofore available under the common law or any statutory provision of this state." W. Va. Code § 53-4A-1(a).

A habeas corpus proceeding is markedly different from a direct appeal or writ of error in that only errors involving constitutional violations shall be reviewed. Syl. Pt. 2., *Edwards v. Leverette*, 163 W. Va. 571 (1979). Petitions for writ of habeas corpus are governed in part by West Virginia Code §53-4A-1. The habeas corpus statute "contemplates the exercise of discretion by the court." *Perdue v. Coiner*, 156 W. Va. 467 (1973). The circuit court denying or granting relief in a habeas corpus proceeding must make specific findings of fact and conclusions of law relating to each contention raised by the petitioner. *State ex rel. Watson v. Hill*, 200 W. Va. 201 (1997). To sustain his Petition, Petitioner must prove his claims by a preponderance of the evidence.

"The court shall prepare and enter an order for summary dismissal of the petition if the contentions in fact or law relied upon in the petition have been previously and finally adjudicated or waived." W. Va. R. Habeas 4(c). What's more, if "the petition contains a mere recitation of grounds without adequate factual support, the court may enter an order dismissing the petition, without prejudice, with directions that the petition be refiled containing adequate factual support." *Id*. Finally, for "all petitions not dismissed summarily as provided in Rule 4(c), the court shall order the respondent to file an answer. . ." W. Va. R. Habeas 4(d).

If the court upon review of the petition, exhibits, affidavits, or other documentary evidence is satisfied that petitioner is not entitled to relief, the court may deny a petition for writ of habeas corpus without an evidentiary hearing. Syl. Pt. 1, *Perdue v. Coiner*, 156 W. Va. 467 (1973); *State ex rel. Waldron v. Scott*, 222 W. Va. 122 (2008). Upon denying a petition for writ of habeas corpus the court must make specific findings of fact and conclusions of law as to each

contention raised by the petitioner, and must also provide specific findings as to why an evidentiary hearing was unnecessary. Syl. Pt. 1, *State ex rel. Watson v. Hill, 200 W. Va. 201 (1997);* Syl. Pt. 4., *Markley v. Coleman,* 215 W. Va. 729 (2004); R. Hab. Corp. 9(a).

This Court reviews claims of ineffective assistance of counsel under the following two-part test: whether

> (1) Counsel's performance was deficient under an objective standard of reasonableness; and
> (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed2d 74 (1984); *State v. Miller,* 459 S.E.2d 114 (W.Va. 1995). Then, to determine whether performance was deficient,

> courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.

Syl. Pt. 6, *State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114 (1995). Thus, Petitioner has a heavy burden to prove previous counsel's ineffectiveness. "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. Pt. 21, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

## ANALYSIS

The Court has been fully briefed and an evidentiary hearing on this matter would not aid he Court in rendering its opinion.

**Ground 11 - Ineffective Assistance of Trial Counsel.**

Mr. Prophet alleges that his constitutional right to effective assistance of trial counsel was denied because trial counsel: 1) failed to thoroughly and independently investigate the crime, 2) failed to file a motion *in limine* to preclude the introduction of Mr. Prophet's book, 3) failed to move for limiting instruction on Mr. Prophet's book, 4) failed of trial counsel to object to questioning regarding post arrest silence, 5) failed of trial counsel to object to improper closing argument, 6) failed to object to bias of the trial court, 7) failed to lodge appropriate objections, and 8) failed to relay Mr. Prophet's version of events to the State.

1) First, Mr. Prophet alleges that trial counsel failed to thoroughly and independently investigate the crime by not searching for blood evidence from the woods on the Devonshire property, failing to interview Mr. Medina, and failed to investigate reports of threats to law enforcement. Mr. Prophet alleges that he hid in the woods after getting into a scuffle with the an attacker and may have lost some blood there. Mr. Prophet offers little evidence that his blood was in the woods, where the blood was in the woods, that he notified counsel to investigate where to search for blood, that counsel refused to search for blood, or that finding his blood in the woods somehow would have affected the outcome of the trial. Had trial counsel searched for blood in the woods it is very unlikely that it would have been found.

Mr. Prophet alleges that his trial counsel should have immediately found and questioned Jospeh Medina. When Mr. Prophet was arrested, Mr. Medina had already been arrested on other charges and was represented by counsel. There is no indication that Mr. Medina would have cooperated with Mr. Prophet's counsel at the time. There is no indication that Mr. Medina would have offered any information favorable to Mr. Prophet at the time, as Mr. Medina gave incriminating statements against to the police and testified against Mr. Prophet at trial.

Mr. Prophet alleges that his trial counsel failed to investigate reports to law enforcement about threats from Mr. Medina and that trial counsel only subpoenaed computer aided dispatch ("CAD") sheet right before trial. The CAD sheets where introduced at trial and Mr. Prophet testified at trial about his calls to law enforcement about threats from Mr. Medina. All of this evidence was used at trial. Because counsel obtained this evidence and used it at trial this there is no evidence that counsel's performance was deficient or that if he investigated this information earlier the outcome of the trial would have been different.

In sum, Mr. Prophet fails to prove that counsel's investigation was deficient under an objective standard of reasonableness, or a reasonable probability that, but for counsel's inadequate investigation, the result of the proceedings would have been different.

**2)** Second, Mr. Prophet alleges that trial counsel trial counsel was ineffective by failing to file a motion *in limine* to preclude the introduction of Mr. Prophet's book. Trial counsel objected to the introduction of Mr. Prophet's book on multiple occasions, and the trial court heard extensive argument on the use of the book as evidence at trial. Finally the Supreme Court upheld he trial court's rulings regarding the book. *State v. Prophet*, 234 W. Va. 33, 762 S.E.2d 602, *cert. denied*, 135 S. Ct. 683, 190 L. Ed. 2d 396 (2014) *reh'g denied*, 135 S. Ct. 1035, 190 L. Ed. 2d 900 (2015). When counsel objected to the introduction of evidence, whether before or during trial, makes no difference for terms of effective assistance of counsel. Trial counsel preserved the alleged error of introducing the evidence, and the Supreme Court upheld the trial court's ruling. It is clear that trial counsel tried to preclude the use of the book at trial, and that had trial counsel done so with a written motion *in limine*, the trial court's ruling would not have been different. Finally, even had the trial court precluded the use of the book in cross-examination it is unlikely that the result of the trial would have been different.

**3)** Mr. Prophet alleges ineffective assistance of counsel for failing to move for a limiting instruction on Mr. Prophet's book. This evidence was direct rebuttal evidence and not simply to impeach the credibility of Mr. Prophet, thus a limiting instruction would not have been appropriate. Even if a limiting instruction were appropriate, counsel need not move for a limiting instruction as it is within the strategic decisions of trial counsel whether or not to shine even further light on obviously damning evidence. Finally, had a limiting instruction been given as Mr. Prophet alleges was proper, it is very unlikely that the result of the trial would have been different.

**4)** Mr. Prophet next alleges that trial counsel was ineffective by failing to object to questioning regarding post-Miranda silence. At trial, counsel objected to questioning regarding Mr. Prophet's silence. Mr. Prophet appealed the Court's ruling, and the Supreme Court found no error. Because, Mr. Manford did object to the State questioning Mr. Prophet about his silence, trial counsel's performance was not deficient.

**5)** Mr. Prophet alleges that trial counsel was ineffective for failing to object to improper closing argument. Although, trial counsel did not object to the closing argument, the supreme court reviewed the comments and found that the comments were not improper or unfairly prejudicial. Nonetheless, whether to object to prejudicial statements in a closing argument is a tough call for a trial attorney, because an objection will only shine a light on the prejudicial statement, especially if the objection is overruled. Although it is prejudicial to call a defendant a liar, in this case it was not unfairly prejudicial because the evidence in this case supported that conclusion. The jury, in rendering its verdict, also came to the conclusion that Mr. Prophet's testimony was not believable, and found him guilty. Accordingly, Counsel's performance was not deficient and the outcome of the trial would not likely have differed had counsel objected.

6) Mr. Prophet alleges that trial counsel was ineffective for failing to object to bias on the part of the trial court. There is no evidence of bias by the trial court, thus this claim must fail.

7) Mr. Prophet alleges that his trial counsel was ineffective because counsel: failed to "lodge other appropriate objections and to raise proper grounds for his post-trial motions," failed to question Lieutenant Harmison about some heroin purchase, failed to get Mr. Medina's false testimony stricken from the record, failed to present a constitutionally adequate closing, and presented the case in an inculpatory "style." Mr. Prophet further alleges a number of things that he says his counsel should have objected to including excessive court security, and the victim's family "shouting" comments about Mr. Prophet in the presence of the jury, among others. The Court finds no deficiencies in trial counsel's performance in any of the alleged deficiencies under this section. Further, Mr. Prophet does not offer any evidence that the trial outcome would have been different had trial counsel performed the way that he believes counsel should have performed.

8) Mr. Prophet alleges that his trial counsel was ineffective because they failed "to relay version of events to the prosecutor and to assert his innocence." Mr. Prophet has produced no evidence that this occurred, nor has he produced evidence that counsel failing to relay attorney-client communications is objectively unreasonable, nor is there any inkling of evidence that the outcome of the trial would have been different if Mr. Prophet's attorneys told the State what Mr. Prophet's testimony would be. At the very least, the state would have been even more prepared to cross-examine Mr. Prophet. Accordingly, this claim must fail.

Because Mr. Prophet failed to prove any deficient performance of trial counsel, and failed to show that the results would have been different had trial counsel performed as Mr. Prophet

alleges counsel should have, Mr. Prophet's claim of ineffective assistance of trial counsel is **DENIED**.

### Ground 12 - Ineffective Assistance of Appellate Counsel

Lastly, Mr. Prophet argues that his appellate counsel, Chistopher J. Prezioso, was ineffective because 1) counsel's argument was weakly presented, and 2) counsel's failure to raise the "constitutional underpinnings regarding Petitioner's righto remain silent." Respondent provided the Court with all of the appellate briefs. The Court has review all of the appellate briefs and the Supreme Court's decision and finds that there is no basis for Mr. Prophet's blanket assertion that the appeal was weakly presented. More specifically, the Court finds that appellate counsel did argue the "constitutional underpinnings regarding Petitioner's right to remain silent." *See* Mr. Prophet's appellate brief at 44. Additionally, the Supreme Court of Appeals of West Virginia thoroughly analyzed the issue of post arrest silence in Section III C of its opinion. *State v. Prophet*, 234 W. Va. 33, 43-44, 762 S.E.2d 602, 612-13 (2015).

Because Mr. Prophet failed to prove any deficient performance of appellate counsel, and failed to show that the results would have been different had appellate counsel performed as Mr. Prophet alleges counsel should have, Mr. Prophet's claim of ineffective assistance of appellate counsel is **DENIED**.

### Conclusion

The Court would not be aided by a hearing on this Petition, and for the foregoing reasons, Mr. Prophet's Petition for Habeas Corpus is **DENIED**.

The Clerk shall enter this Order as of the date written below and shall transmit attested copies to all counsel and parties of record, including the Prosecuting Attorney for Berkeley County and Lisa A. Green, Esq., counsel for the Petitioner.

This is a final Order. The Clerk is directed to retire this matter from the active docket.

ENTER this 28 day of October, 2015.

_____
MICHAEL D. LORENSEN, JUDGE
TWENTY-THIRD JUDICIAL CIRCUIT
BERKELEY COUNTY, WEST VIRGINIA

**A TRUE COPY**
**ATTEST**

Virginia M. Sine
Clerk Circuit Court

By: _____
Deputy Clerk